UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NIKOLAI NOVACK,<br><br>        Plaintiff,<br><br>vs.<br><br>WARDEN YORDY (IMSI),<br><br>        Defendant. | Case No. 1: 20-cv-00009-BLW<br><br>**INITIAL REVIEW ORDER<br>BY SCREENING JUDGE** |

The Complaint of Plaintiff Nikolai Novack was conditionally filed by the Clerk of Court due to his status as a prisoner and pauper. (Dkts. 3, 1.) A "conditional filing" means that Plaintiff must obtain authorization from the Court to proceed. After reviewing the Complaint, the Court has determined that Plaintiff will be permitted to proceed.

## REVIEW OF COMPLAINT

### 1. Summary of Allegations

Plaintiff is an Idaho Department of Correction (IDOC) prisoner. He asserts that he spent $240.00 on personal property from a catalog, intending that the property be used for religious worship, as directed by the chaplain, but prison officials would not permit him to use it. They required him to send the property to family or friends outside the prison because they assert it was obtained in a manner contrary to prison policy governing purchase of religious items. Plaintiff asserts prison officials' actions have denied him the right to free exercise of religion, a violation of the First Amendment to the United States

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 1**

Constitution. He also asserts that his state law rights have been violated, but he does not elaborate on the cause of action. He seeks injunctive relief—he would like to be able to have those items of worship he ordered.

## 2. Standard of Law

Under modern pleading standards, Federal Rule of Civil Procedure 8 requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The *Iqbal/Twombly* "facial plausibility" standard is met when a complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, citing *Twombly*, 550 U.S. at 556. A plaintiff must provide sufficient factual allegations to show that there is "more than a sheer possibility that a defendant has acted unlawfully." *Ibid.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Ibid.*

Federal Rule of Civil Procedure 8 applies to all pleadings filed in the federal court. In addition, the Prison Litigation Reform Act (PLRA)[1] requires the Court to screen all pro se prisoner and pauper complaints to determine whether they have stated a claim upon which relief can be granted before such complaints are served on the defendants. 28

---

[1] Pub. L. No. 104-134, 110 Stat. 1321, *as amended*, 42 U.S.C. § 1997e, *et seq.*

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 2**

U.S.C. §§ 1915 & 1915A. The Court must dismiss any claims that are frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

The Court liberally construes a plaintiff's pleadings to determine whether the case should be dismissed for lack of a cognizable legal theory or a failure to plead sufficient facts to support a cognizable legal theory, under the *Iqbal/Twombly* standard.

Plaintiff brings claims under 42 U.S.C. § 1983, the civil rights statute. To state a claim under § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). For Plaintiff's purposes, 42 U.S.C. § 1983 is an implementing statute that makes it possible to bring a cause of action under the Amendments of the United States Constitution.

The First Amendment Free Exercise Clause absolutely protects the right to believe in a religion; it does not absolutely protect all conduct associated with a religion. *Cantwell v. Connecticut*, 310 U.S. 296, 303-04 (1940). Inmates retain their free exercise of religion rights in prison. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).

To serve as a basis for a colorable claim challenging a prison restriction under the Free Exercise Clause, an inmate's belief must be both sincerely held and rooted in religious belief. *Shakur v. Schriro*, 514 F.3d 878, 884 (9th Cir. 2008); *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994). Further, the burden placed on the inmate's religious

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 3**

exercise by the defendants' actions must be substantial. *Hernandez v. Comm'r*, 490 U.S. 680, 699 (1989). *De minimis*—or minor—burdens on the free exercise of religion are not of a constitutional dimension, even if the belief upon which the exercise is based is sincerely held and rooted in religious belief. *See, e.g.*, *Rapier v. Harris*, 172 F.3d 999, 1006 n.4 (7th Cir. 1999) (the unavailability of a non-pork tray for inmate at 3 meals out of 810 does not constitute more than a *de minimis* burden on inmate's free exercise of religion).

Challenges to prison restrictions that are alleged "to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system, to whose custody and care the prisoner has been committed in accordance with due process of law." *Jones v. N.C. Prisoners' Union*, 433 U.S. 119, 125 (1977) (citation omitted). What constitutes a reasonable opportunity for religious exercise, therefore, must be evaluated within the context of a prison's need for security, among other legitimate goals. *O'Lone*, 482 U.S. at 350-53 (1987) (holding that a prison's policy of not allowing Muslim inmates on work detail to return to the prison to attend Jumu'ah, a group worship service, did not violate the Constitution).

So long as a restriction on an inmate's religious practice "is reasonably related to legitimate penological interests," that restriction is valid. *Turner v. Safley*, 482 U.S. 78, 89 (1987). Factors to be considered in this reasonableness inquiry include (1) whether there is a logical connection between the governmental interest and the particular policy or decision at issue; (2) whether "alternative means of exercising the right remain open to prison inmates"; (3) the impact that accommodating a prisoner's religious practice would

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 4**

have on "other inmates, on prison personnel, and on allocation of prison resources generally"; and (4) whether there is an absence of "obvious, easy alternatives to the policy adopted by" prison officials. *O'Lone*, 482 U.S. at 350-53 (internal quotation marks and alterations omitted).

## 2. Discussion

Plaintiff alleges that the chaplain directed him to order the items for personal worship through a catalog, which is in compliance with prison policies. Prison officials are denying him access to the religious items, claiming that Plaintiff did not receive approval from the chaplain. Plaintiff may proceed on his claims that challenge whether he obtained approval of the chaplain and complied with the prison rule, but it is being unreasonably applied to him, or that the rule requiring that all religious property be obtained through an approved source does not meet the *Turner v. Safley* test.

## 3. Conclusion

Plaintiff may proceed as outlined above. This Order does not guarantee that any of Plaintiff's claims will be successful; it merely finds that one or more is colorable, meaning that the claims will not be summarily dismissed at this stage. This Order is not intended to be a final or a comprehensive analysis of Plaintiff's claims, but it is only a determination that one or more of Plaintiff's claims is plausible and should proceed to the next stage of litigation. If, during the course of proceedings, the discovery process reveals facts showing that other defendants were involved in his treatment, he may file an amended complaint with a motion to amend.

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 5**

**4.  Plaintiff's Undesignated Motion**

Plaintiff has filed a motion concerning the noisy and disruptive living conditions in his housing unit. He alleges that he repeatedly requested a transfer, but prison staff ignored him. The stress and agony of the situation triggered Plaintiff to "act out" or engage in fighting, which resulted in additional disciplinary or criminal charges against him.

This is a completely different claim from the First Amendment claim brought in this action. This claim appears to be related to a claim in Plaintiff's other federal civil rights case, No. 1:19-cv-00446-BLW. Plaintiff was ordered to file a supplemental to his Complaint to plead additional facts related to his conditions of confinement claim. It is unclear whether this motion should have been filed in that case as Plaintiff's supplement. In any event, because the subject matter is related to that case, not this one, the Court will order the Clerk of Court to file a duplicate of the motion in that case. In this case, Plaintiff's motion (which has no title), filed at Docket No. 6, will be stricken.

**ORDER**

**IT IS ORDERED:**

1.    Plaintiff's undesignated motion (Dkt. 6) is STRICKEN. The Clerk of Court is ordered to file a copy of the motion in Case No. 1:19-cv-00446-BLW.

2.    Plaintiff may proceed on his First Amendment claim against Defendant Warden Yordy.

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 6**

3.      Defendant **Warden Yordy** will be allowed to waive service of

summons by executing, or having counsel execute, the Waiver of

Service of Summons as provided by Fed. R. Civ. P. 4(d) and

returning it to the Court within 30 days. If Defendant chooses to

return the Waiver of Service of Summons, the answer or pre-answer

motion will be due in accordance with Rule 12(a)(1)(A)(ii).

Accordingly, the Clerk of Court will forward a copy of the

Complaint (Dkt. 3), a copy of this Order, and a Waiver of Service of

Summons to the following counsel:

> **Mark Kubinski**, Deputy Attorney General for the State of
>
> Idaho, Idaho Department of Corrections, 1299 North Orchard,
>
> Ste. 110, Boise, Idaho 83706 on behalf of Defendant Warden
>
> Yordy.

4.      Should any entity determine that the individuals for whom counsel

for the entity was served with a waiver are not, in fact, its employees

or former employees, or that its attorney will not be appearing for

the entity or for particular former employees, it should file a notice

within the CM/ECF system, with a copy mailed to Plaintiff,

indicating which individuals for whom service will not be waived.

5.      If Plaintiff receives a notice from Defendants indicating that service

will not be waived for an entity or certain individuals, Plaintiff will

have an additional 90 days from the date of such notice to file a

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 7**

notice of physical service addresses of the remaining Defendants, or claims against them will be dismissed without prejudice without further notice.

6.    The parties must follow the deadlines and guidelines in the Standard Disclosure and Discovery Order for Pro Se Prisoner Civil Rights Cases, issued with this Order.

7.    Any amended pleadings must be submitted, along with a motion to amend, within 150 days after entry of this Order.

8.    Dispositive motions must be filed no later than 300 days after entry of this Order.

9.    Each party must ensure that all documents filed with the Court are simultaneously served upon the opposing party (through counsel if the party has counsel) by first-class mail or via the CM/ECF system, pursuant to Federal Rule of Civil Procedure 5. Each party must sign and attach a proper mailing certificate to each document filed with the court, showing the manner of service, date of service, address of service, and name of person upon whom service was made.

10.   The Court will not consider ex parte requests unless a motion may be heard ex parte according to the rules and the motion is clearly identified as requesting an ex parte order, pursuant to Local Rule of Civil Practice before the United States District Court for the District of Idaho 7.2. ("Ex parte" means that a party has provided a

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 8**

document to the court, but that the party did not provide a copy of the document to the other party to the litigation.)

11.    All Court filings requesting relief or requesting that the Court make a ruling or take an action of any kind must be in the form of a pleading or motion, with an appropriate caption designating the name of the pleading or motion, served on all parties to the litigation, pursuant to Federal Rule of Civil Procedure 7, 10 and 11, and Local Rules of Civil Practice before the United States District Court for the District of Idaho 5.1 and 7.1. The Court will not consider requests made in the form of letters.

12.    No party may have more than three pending motions before the Court at one time, and no party may file a motion on a particular subject matter if that party has another motion on the same subject matter currently pending before the Court. Motions submitted in violation of this Order may be stricken, summarily denied, or returned to the moving party unfiled.

13.    Plaintiff must notify the Court immediately if Plaintiff's address changes. Failure to do so may be cause for dismissal of this case without further notice.

14.    Pursuant to General Order 324, this action is hereby returned to the Clerk of Court for random civil case assignment to a presiding judge, on the proportionate basis previously determined by the

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 9**

District Judges, having given due consideration to the existing caseload.

DATED: May 11, 2020

B. Lynn Winmill
U.S. District Court Judge